# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO EASTERN DIVISION

| | |
|---|---|
| AMY S. TANNER, ) | |
| ) | |
| Plaintiff, ) | CASE NO: 1:20-cv-01104 |
| ) | |
| v. ) | Judge Dan Aaron Polster |
| ) | |
| WELLS FARGO BANK, N.A., ) | **OPINION AND ORDER** |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM

Amy S. Tanner, individually and on behalf of all others similarly situated, ("Plaintiff" or "Tanner"), by and through counsel, seeks to recover alleged damages and civil penalties arising from her mortgage with Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo"). Pending before the Court is Defendant's Motion to Dismiss Plaintiff's second amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that the complaint fails to state a claim upon which relief is granted ("Defendant's Motion"). For the reasons below, the Court **GRANTS** in part and **DENIES** in part Defendant's Motion, Doc. #: 14.

## I. PROCEDURAL HISTORY

On May 20, 2020, Plaintiff filed a two-count class action complaint in this Court alleging violations of 12 C.F.R. § 1024.36(d) and § 1024.35(e), and 12 U.S.C. § 2605(e) and § 2605(k), and breach of contract. Doc. #: 1. On July 7, 2020, the parties requested, and the Court granted the parties' proposed stipulation extending Plaintiff's deadline to amend her Complaint until July 17, 2020. Doc. #: 9. Plaintiff filed an amended class action complaint, on July 17, 2020, adding a claim for breach of covenant of good faith and fair dealing, negligent misrepresentation, breach of fiduciary duty, and violations of 12 C.F.R. § 1024.36(d) and § 1024.35(e), and 12 U.S.C. § 2605(e)

1

and § 2605(k). Doc. #: 10. On July 24, 2020, the Court instructed Plaintiff to file a second amended complaint that clearly articulates Plaintiff's revised theory of the case no later than August 6, 2020. Doc. #: 11. On August 6, 2020, Plaintiff filed her second amended class action Complaint ("Second Amended Class Action Complaint" or "Complaint"). Doc. #: 12. Plaintiff brings her Complaint pursuant to Fed. R. Civ. P. 23 on behalf of a class and subclass of similarly situated individuals and entities, and alleges the following: 1) breach of contract, 2) breach of covenant of good faith and fair dealing, 3) negligent misrepresentation, 4) breach of fiduciary duty, and 4) violations of 12 C.F.R. § 1024.36(d) and § 1024.35(e), and 12 U.S.C. § 2605(e) and § 2605(k). *Id*. On September 8, 2020, Wells Fargo filed its motion to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Doc. #: 14. On October 8, 2020, Plaintiff filed her opposition brief. Doc. #: 17. Wells Fargo filed its reply brief on October 22, 2020. Doc. #: 18.

## II.  BACKGROUND

The facts are taken from Plaintiff's Complaint, Doc. #: 12, and are accepted as true for the purposes of this motion to dismiss. On January 14, 2014, Plaintiff executed a mortgage ("Plaintiff's Mortgage" or the "Mortgage") to secure payment of a note in the amount of $108,498.00. Doc #: 12, Ex. 1. Every residential loan that is insured by the Federal Housing Administration ("FHA"), including Plaintiff's loan with Wells Fargo, requires lenders to comply with the rules and regulations promulgated by the Secretary of the United States Department of Housing and Urban Development ("HUD"). Plaintiff defaulted on her loan and entered into FHA's Home Affordable Modification Program ("FHA HAMP") around September 2017 with Wells Fargo (the "First Loan Modification"). Doc. #: 12 at ¶50, Ex. 4. At some point between September 2017 and April 2019, Plaintiff defaulted on the terms of her First Loan Modification. *Id*. ¶51. On or about March 12, 2019, Wells Fargo sent a letter to Plaintiff responding to her request for assistance and

detailing her eligibility for a short sale. Doc. #: 12, Ex. 3. Wells Fargo informed her that she was not eligible for the FHA HAMP Loan Modification due to her having "reached the allowable numbers of modifications" ("Plaintiff's Initial Loss Mitigation Denial"). *Id*. Wells Fargo further explained that Plaintiff was not eligible for a repayment plan because, based on the documentation she provided, Wells Fargo was "unable to create an affordable mortgage payment that still meets the requirement of the program. [Wells Fargo] reached this decision by reviewing Plaintiff's monthly income, which is calculated as $3,838.50, along with reviewing the other information she provided." *Id*.

On April 19, 2019, Wells Fargo initiated foreclosure proceedings against Plaintiff. Doc. #: 12 at ¶53. On September 16, 2020, Plaintiff submitted a request to Wells Fargo, as an attempt to secure another modification under FHA HAMP, stating that twenty-four (24) months have lapsed since Plaintiff's First Loan Modification ("Plaintiff's Request #1"). Doc. #: 12 at ¶54, Ex. 5. In response to Plaintiff's request, Wells Fargo wrote to Plaintiff, on September 20, 2019, telling her that she was not eligible to be reviewed for assistance. *Id*. ¶55, Ex. 2. Plaintiff later learned, after this lawsuit was filed, that the basis for Plaintiff's denial was that her request was incomplete, but Wells Fargo never requested any supplemental information from Plaintiff that would be required to complete Plaintiff's request. *Id*. ¶56. Due to the alleged deficiencies in Wells Fargo's denial notice and statement regarding Plaintiff reaching "the allowable numbers of modifications," Plaintiff interpreted Wells Fargo's denial notice to mean that she would no longer qualify for any loss mitigation option, regardless of what documentation she submitted. Doc. #: 12 at ¶¶57-58.

On October 8, 2019, Plaintiff, through counsel, sent Wells Fargo requests for information, notice of error for failure to provide accurate information to a borrower regarding loss mitigation

options and foreclosure, and a formal request to escalate case pursuant to 12 C.F.R. § 1024.36(b), 1024.38(b), and 4000.1, Section III (A)(2)(i)(xi) ("Inquiry #1"). *See* Doc. #: 12 at ¶59, Ex. 6. Plaintiff's Inquiry #1 alleged that Wells Fargo committed an error by sending Plaintiff a refusal notice and wrongfully claiming that Plaintiff's loan was "not eligible to be reviewed for assistance." Doc. #: 12 at ¶60. On October 31, 2019, Wells Fargo sent a written response to Plaintiff stating that Plaintiff's Mortgage "account was handled properly and no corrections are needed as no error has occurred," and summarized the history of Plaintiff's Mortgage account including her loss mitigation request ("Response to Inquiry #1"). Doc. #: 12 at ¶63-66, Ex. 8-9. The letter did not address Wells Fargo's reason for denying Plaintiff's second mitigation request in response to Plaintiff's Inquiry #1. *Id*. Wells Fargo's Response to Inquiry #1 also did not address Plaintiff's request for documentation on the maximum allowable number of modifications because Wells Fargo "considered [it] to be privileged, confidential and/or proprietary information to Wells Fargo." *Id*. Further, the Response to Inquiry #1 included correspondence, dated October 18, 2019, that Plaintiff's account again is not eligible for assistance. *Id*.

On November 14, 2019, Plaintiff, through counsel, sent a second inquiry to Wells Fargo seeking, among other things, information about Wells Fargo's reasoning for denying Plaintiff's request for a loan modification under FHA HAMP ("Inquiry #2"). Doc. #: 12 at ¶¶67-69. On November 25, 2020, Wells Fargo responded to Plaintiff stating that her account was not eligible for assistance. *Id*. Pursuant to a court order related to Plaintiff's foreclosure, Plaintiff submitted another request to Wells Fargo on or about November 27, 2019 (Plaintiff's Request #2"). Doc. #: 12 at ¶73. On December 17, 2019, in response to Plaintiff's Request #2, Wells Fargo approved Plaintiff for an FHA HAMP Trial Period Plan (the "TPP"). Doc. #: 12 at ¶74, Ex. 13. Plaintiff accepted the TPP and made all payments under the same. Doc. #: 12 at ¶75. On April 25,

4

2020, Wells Fargo sent Plaintiff an offer for a permanent FHA-HAMP loan modification for Plaintiff's Mortgage. *See* Doc. #: 12 at ¶76, Ex. 14. Plaintiff's offer was fully executed on May 20, 2020, and Plaintiff's loan was modified a second time ("Plaintiff's Second Loan Modification"). *See* Doc. #: 12 at ¶77, Ex. 15.

While Plaintiff ultimately obtained her Second Loan Modification, Plaintiff alleges that she incurred additional costs and expenses because Wells Fargo failed to request additional documents from Plaintiff or state the precise reason why Plaintiff's Request #1 was denied. Plaintiff contends that she continues to incur costs and expenses associated with her foreclosure. *Id*. ¶78. Specifically, Plaintiff alleges she incurred the following damages: unpaid interest and default-related fees, which continued to accrue on Plaintiff's loan; damage to her credit standing and a delay in the rehabilitation of the same; legal fees and costs in defense of her foreclosure and subsequent loss mitigation requests; and additional amounts including interest, fees, costs, and corporate advances – which were incurred during the period between Plaintiff's first and second request – that capitalized into the balance owed on her loan when the Second Loan Modification was executed. *Id*. ¶¶39, 71-72, 78-80.

## III. DISCUSSION

### A. Rule 12(B)(6) Standard of Review

"On a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, (2007). To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim for which relief can be granted, a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to

5

'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.*

In deciding whether dismissal is appropriate, "[c]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Therefore, in the context of a motion to dismiss relating to a mortgage loan, the Court can consider documents such as those relating to the mortgage transaction, assignment, and foreclosure if they are referenced in plaintiff's complaint and is central to the claims. *See Allen v. Int'l Truck & Engine Corp.*, 2010 U.S. Dist. LEXIS 17392, at *2 (S.D. Ohio 2010).

**1. Breach of Contract**

Plaintiff asserts in her first claim for relief that Wells Fargo breached each of the mortgage instruments by failing to comply with the regulations of the Secretary of HUD incorporated into the Mortgage contract. Doc. #: 12 at ¶90. Plaintiff alleges that "Wells Fargo's actions in sending each of the Refusal Notices violated the SF Handbook's requirement to (1) review and evaluate every loss mitigation request submitted by Plaintiff and Class members, (2) inform Plaintiff and Class members as to the actual "reason or reasons" for the denials of their requests, and (3) seek additional information from Plaintiff and Class members to the extent that their requests were incomplete." Wells Fargo contends that Plaintiff fails to state a claim for breach of contract because there is no private right of action to enforce HUD regulations. Specifically, Wells Fargo asserts that the failure to comply with HUD regulations, even when incorporated into the mortgage contract, does not provide a basis for a breach of contract claim.

6

Plaintiff does not dispute that there is no private right of action under HUD regulations. *See* Doc. #: 17 at 2; *see Fed. Nat'l Mortg. Ass'n v. LeCrone*, 868 F.2d 190, 193 (6th Cir. 1989) ("[N]o express or implied right of action in favor of the mortgagor exists for violation of HUD mortgage servicing policies."); *see, e.g., M.B. Guran Co. v. City of Akron*, 546 F.2d 201, 204 (6th Cir. 1976) (concluding that the HUD regulations create neither an express nor implied private right of action). Rather, Plaintiff argues that she is not asserting a right of action under the HUD regulations but seeks to enforce the terms of her contract (i.e., Mortgage) with Wells Fargo, which Plaintiff argues incorporates the SF Handbook and HUD regulations. According to Plaintiff, the SF Handbook and HUD regulations are integrated through Paragraph 9 of the Mortgage:

> (a) <u>Default</u>. Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security instrument if:
> (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the date of the next monthly payments, or
> (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.
> \*\*\*
> (d) <u>Regulations of HUD Secretary</u>. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary

Doc. #: 12, Ex. 1 at 4-5.

Due to Wells Fargo's alleged failure to review Plaintiff's Request #1, as required by the rules and regulations promulgated by the Secretary of HUD as incorporated into Paragraph (9) of the Mortgage, Plaintiff contends that Wells Fargo breached the Mortgage contract. The Court is unpersuaded.

As Wells Fargo correctly notes, the failure to comply with HUD regulations, even when incorporated into a mortgage contract, does not provide a basis for a breach of contract claim or a

7

private right of action. *See HSBC Bank USA, Natl. Tr. Co. v. Teagarden*, 2013- Ohio 5816, 6 N.E.3d 678, 686 (Ohio Ct. App. 2013); *see also Wells Fargo Bank, N.A. v. Favino*, No. 1:10 CV 571, 2011 U.S. Dist. LEXIS 35618, at *36 (N.D. Ohio Mar. 31, 2011) ("A failure of a mortgagee to adhere to the HUD servicing requirements in the regulations can be an affirmative defense to foreclosure, but does not form the basis for a claim.") While the Court is persuaded that a regulation incorporated into a contract may create a private right of action when Congress intended to create a private right of action, there is no evidence in the record that suggests a HUD regulation may create a private right of action when incorporated into a contract where Congress did not create such right. *See HSBC Bank USA*, 2013-Ohio-5816, ¶ 43 ("There is abundant state law precedent that the failure to comply with HUD regulations, when incorporated into the mortgage contract, constitutes a defense to the foreclosure action (similar to notice provisions) rather than a basis for a breach of contract claim") (collecting cases). Put differently, it is simply incorrect to say that "HUD regulations" tangentially incorporated into a mortgage contract can create a private cause of action, allowing Plaintiff to play the role of regulatory enforcer, that has not been authorized by Congress. *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S. Ct. 2479, 61 L. Ed. 2d 82 (1978) (holding in the absence of clear evidence of congressional intent, the court may not usurp the legislative power by unilaterally creating a cause of action); *see also St. Christopher Assocs. v. United States*, 511 F.3d 1376, 1384 (Fed. Cir. 2008) (holding that a general reference to the agency's regulations did not incorporate a specific regulation promulgated by the agency or a specific section of the agency's handbook.")

Even if a SF Handbook or HUD regulation referenced in a mortgage contract could potentially form the basis for a breach of contract claim, the contract must use language that are expressed and clear, so as to leave no ambiguity about the identity of the material being referenced,

8

nor any reasonable doubt about the fact that the referenced material is being incorporated into the contract. *See Volovetz v. Tremco Barrier Sols., Inc*., 2016-Ohio-7707, 74 N.E.3d 743, at *27 (Ohio Ct. App.); *see also Donlon v. Evolve Bank & Tr*., No. JFM-12-2384, 2014 U.S. Dist. LEXIS 44765, at *16 (W.D. Tenn. Mar. 31, 2014) ("A violation of the Handbook may sustain a breach of contract claim where a final agreement *expressly* incorporates the Handbook's various terms."); *see United States ex rel. Ken's Carpets Unlimited v. Interstate Landscaping Co*., Nos. 92-6571, 92-6631, 1994 U.S. App. LEXIS 24419 (6th Cir. Sep. 6, 1994) ("Incorporation by reference, however, is a term of art, and not every reference is the equivalent to substantive incorporation.")

As Wells Fargo correctly points out, however, the Mortgage does not reference any portion of HUD regulations or the SF Handbook nor provide any support for how the particular provisions cited in Plaintiff's Complaint are incorporated into the terms of Plaintiff's Mortgage. The only HUD reference cited by Plaintiff is on page 9 in her Mortgage. This casual reference to regulations issued by the "[HUD] Secretary" does not come close to meeting the requirement that the regulation needs to be specifically identified and that the contractual language must be clear that the purpose of the reference is to make it part of the contract.

Plaintiff asks this Court to follow *Sinclair* in finding that a failure to comply with HUD regulations incorporated into a contract constitutes a breach. However, the court in *Sinclair* found that the HUD regulations were explicitly incorporated into the parties' contract. Here, the Court finds that there is only a general reference to HUD regulations in the Mortgage, and this reference is not tied to the contractual obligations of the parties which is the subject of this lawsuit. Further, *Sinclair* follows a Fourth Circuit case, where HUD regulations were explicitly and indisputably incorporated into the parties' deed of trust. *See Sinclair v. Donovan*, No. 1:11-CV-00010, 2011 U.S. Dist. LEXIS 128220, at *25-26 (S.D. Ohio Nov. 4, 2011) (citing to *Kersey v. PHH Mortg.*

9

*Corp*., 682 F. Supp. 2d 588, 590 (E.D. Va. 2010), where the court found "[o]ne such regulation incorporated into the terms of the Deed of Trust is 24 C.F.R. § 203.604").

### 2. Breach of Covenant of Good Faith and Fair Dealing

While Ohio law recognizes that every contract contains an implied duty for the parties to act in good faith and to deal fairly with each other, this duty is part of a breach of contract claim and does not stand alone. *See Lucarell v. Nationwide Mut. Ins. Co*., 97 N.E.3d 458, 469 (Ohio 2018). Because the Court dismisses Plaintiff's breach of contract claim, Plaintiff's claim for breach of covenant of good faith and fair dealing is dismissed because such a claim cannot stand alone.

### 3. Negligent Misrepresentation

Under a claim for negligent misrepresentation:

> [o]ne who, in the course of his [or her] business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions ... is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he [or she] fails to exercise reasonable care or competence in obtaining or communicating the information.

*Andersons, Inc. v. Consol, Inc*., 348 F.3d 496, 505 (6th Cir. 2003).

In addition to the above, Wells Fargo argues that there must be a "special relationship" between Wells Fargo and Plaintiff for a negligent misrepresentation claim. *See Ford v. New Century Mortg. Corp*., 797 F. Supp. 2d 862, 872 (N.D. Ohio 2011). To refute Wells Fargo's contention, Plaintiff argues that a special relationship is not required under Ohio law. The Court agrees. *See Bank of Am. v. Kenwood Towne Place*, 2010 Ohio Misc. LEXIS 528 (Ohio C.P. Aug. 20, 2010) ("The Court finds that Ohio law does not require a special relationship as an element of negligent misrepresentation."); *see also Culy Constr. & Excavating, Inc. v. Laney Directional Drilling Co*., 2012 U.S. Dist. LEXIS 79575 (S.D. Ohio June 8, 2012) ("Some persuasive authority rejects *Culy's* too-narrow 'special relationship' argument."); *see Nat'l Mulch & Seed, Inc. v. Rexius*

10

*Forest By-Products, Inc*., No. 2:02-cv-1288, 2007 U.S. Dist. LEXIS 24904, at *29-30 (S.D. Ohio Mar. 22, 2007) ("This Court agrees that a special relationship is not a formal element of a negligent misrepresentation claim under Ohio law.")

> As explained in *National Mulch and Seed, Inc*., 2007 U.S. Dist. LEXIS 24904:
>
>> To the extent Ohio courts discuss a special relationship in connection with a negligent misrepresentation claim, the discussion appears to be related to the requirement that a defendant supply false information for the guidance of the plaintiff in its business transactions. The "for the guidance of language directs the court's attention to the duty owed and serves to limit the class of potential plaintiffs. As explained by the Supreme Court of Ohio, liability for negligent misrepresentation is limited to "the person or one of a limited group of persons for whose benefit and guidance [the defendant] intends to supply the information or knows that the recipient intends to supply it." *Gutter v. Dow Jones, Inc*. 22 Ohio St.3d 286, 288, 22 Ohio B. 457, 490 N.E.2d 898 (1986); *accord Haddon View*; 70 Ohio St.2d at 157 (not requiring any special relationship but limiting liability to misrepresentation made to a foreseeable class of persons).

The Court finds that Plaintiff pled sufficient facts in the record from which a reasonable juror could conclude that Wells Fargo supplied affirmative false information through its responses to Plaintiff. Plaintiff's Complaint further supports the conclusion that Wells Fargo knew that its representations were being transmitted directly to Plaintiff, and, therefore, were not made to an unlimited class of persons. As such, Plaintiff pled sufficient facts in her Complaint to satisfy the requisite lower standard for negligent misrepresentation – that Wells Fargo failed to exercise reasonable care or competence in communicating information about Plaintiff's loss mitigation options. Moreover, there is sufficient evidence that would allow a jury to reasonably conclude that these communications were made in the course of a transaction in which Wells Fargo had a pecuniary interest.

Accordingly, upon reviewing the record, taking the allegations of the Complaint as true, Plaintiff has stated a claim for negligent misrepresentation.

### 4. Breach of Fiduciary Duty

A breach of fiduciary duty claim has three elements: (1) the existence of a duty arising from a fiduciary relationship, (2) a failure to observe such duty, and (3) an injury proximately resulting therefrom. *See Wells Fargo Bank, N.A. v. Perkins,* 2011-Ohio-3790, *17 (Ohio Ct. App.); *see also McConnell v. Hunt Sports Ent.*, 132 Ohio App. 3d 657, 687, 725 N.E.2d 1193 (1999). A fiduciary relationship need not be created by contract; it may arise out of an informal relationship where both parties understand that a special trust or confidence has been reposed. *Stone v. Davis*, 419 N.E.2d 1094, 1098 (1981).

Wells Fargo argues that a bank does not have a fiduciary relationship with its borrowers, except in special circumstances. Plaintiff argues, however, that she placed a special trust or confidence in Wells Fargo to inform her of which alternatives to foreclosure were available to her and provide her with an actual reason why she was denied the particular loss mitigation options that she sought. Plaintiff centers her special trust or confidence argument around the alleged fact that Wells Fargo's duty pursuant to HUD regulations and the SF Handbook created a relationship beyond a common business relationship, and was, in fact, a fiduciary relationship. Doc. #: 12 at ¶120. However, the Court agrees with Wells Fargo.

If a fiduciary duty may be imposed on the mere basis that a contract involves a HUD regulation, then every contract that involves a HUD regulation in virtually every circumstance will create a fiduciary relationship. Plaintiff has cited no authority in support of such a broad claim, and the Court finds that, without alleging sufficient facts, Plaintiff and Wells Fargo had nothing more than a typical business relationship (i.e. debt/creditor, mortgagor/mortgagee, or bank/customer). *See Forsythe v. BancBoston Mortg. Corp.*, 135 F.3d 1069, 1077 (6th Cir. 1997) ("While the relationship between a mortgagor and mortgagee is often described as one of trust,

technically it is not of a fiduciary character"); *see also Lippy v. Soc'y Nat'l Bank,* 100 Ohio App. 3d 37, 651 N.E.2d 1364 (1995) ("[T]he general rule is that a mere debtor-creditor relationship without more does not create a fiduciary relationship"); *see PNC Bank, Nat'l Ass'n v. Oswald*, No. 3:10 CV 1976, 2011 U.S. Dist. LEXIS 38958, at *2 (N.D. Ohio Apr. 11, 2011) ("Ohio law does not recognize a fiduciary duty between a bank and its customer absent special circumstances.") Indeed, "[a] fiduciary relationship is one in which special confidence and trust is reposed in the integrity and fidelity of another [,] and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Carnahan v. SCI Ohio Funeral Servs*., No. 00AP-490, 2001 Ohio App. LEXIS 1106, at *14 (Ct. App. Mar. 13, 2001) (other citations omitted).

Furthermore, Plaintiff's proposition suggesting that one party can repose a 'special trust or confidence' in the other party is insufficient as a matter of law without the allegation that both parties understood that the fiduciary relationship existed. *Nichols v. Chi. Title Ins. Co.,* 107 Ohio App. 3d 684, 669, 699, N.E.2d 323 (1995)*; see also Williams v. ITT Fin. Servs*., APPEAL Nos. C-960234, C-960255, 1997 Ohio App. LEXIS 2721, at *24 (Ct. App. June 25, 1997) ("a fiduciary relationship cannot be unilaterally created by one party in the creditor/debtor relationship."). On the contrary, the record in this case demonstrates that both parties engaged in an arms-length business transaction in which both parties were acting to protect their own interest. As Wells Fargo notes, Plaintiff's actions after she received the refusal notes demonstrate that Plaintiff did not place much "trust or confidence" in Wells Fargo as Plaintiff continuously submitted, through competent counsel, inquiries alleging that Wells Fargo committed errors.

The Court is not persuaded by Plaintiff's reliance on *Lippy*, *Stone*, and *Sinclair* to go beyond the established rule that Ohio law does not recognize a fiduciary duty between a bank and its customer absent special circumstances. In *Lippy*, unlike this case, the bank representative

13

cultivated a "close relationship" with the plaintiff, which led the court to conclude that whether an informal fiduciary relationship existed would be for the jury to decide if it was supported by evidence. *See Lippy*, 100 Ohio App. 3d at 45. Here, Plaintiff has not alleged any facts to establish that she had an "informal relationship" with Wells Fargo. *Stone* stands for the proposition that a lending institution has a duty to advise the customer about obtaining insurance when it broaches the subject with the customer. See *Stone*, 66 Ohio St. 2d at 80. There is nothing in this case pertaining to mortgage insurance, and there is no allegation that Wells Fargo raised any new subject with Plaintiff.

In sum, the Court finds that Plaintiff fails to allege sufficient facts, if reasonably construed, that would support a finding that Plaintiff had a special relationship with Wells Fargo simply because the Mortgage incorporated HUD regulations. Accordingly, because there is no fact-specific inquiry that would cure this defect, Count (4) four of Plaintiff's Complaint is dismissed.

### 5. Real Estate Settlement Procedures Act

In Count 5, Plaintiff alleges that Wells Fargo violated the Real Estate Settlement Procedures Act ("RESPA") pursuant to 12 C.F.R. § 1024.35(e) and § 1024.36(d), and 12 U.S.C. §§ 2605(e) and (k) for failure to timely and properly respond to Plaintiff's Inquiries, Requests for Information (RFIs), and Notices of Error (NOEs). As a result of the RESPA violations, Plaintiff seeks both actual and statutory damages.

RESPA is a consumer protection statute that regulates the real estate settlement process, including loan servicing and assignments. 12 U.S.C. § 2601. Congress enacted RESPA "to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." *Id*.

Plaintiff's RESPA claims are predicated on the assertion that she sent valid RFIs, NOEs, and Inquiries to Wells Fargo, and Wells Fargo failed to conduct a reasonable investigation and properly respond. Doc. #: 12 at ¶¶133-141. Wells Fargo contends that Plaintiff's RESPA claims should be dismissed because 1) the purported RFIs and NOEs did not relate to "servicing" of Plaintiff's loan, and, therefore, did not trigger Wells Fargo's obligation under RESPA; and 2) even assuming Plaintiff's RESPA claims are valid, Plaintiff failed to allege compensable damages.

A. <u>Section 2605(e) Claims</u>

Pursuant to 12 U.S.C. § 2605(e), "'[d]uty of loan servicer to respond to borrower inquiries,' if any servicer of a federally related mortgage loan receives a qualified written request [QWR] from the borrower (or an agent of the borrower) for information *relating to the servicing of such loan*, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period."

Under 12 U.S.C. § 2605(e), in relevant part, a QWR shall be a written correspondence that:

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower. 12 U.S.C. § 2605(e)(1)(B).

Pursuant to 12 U.S.C. § 2605(i)(2)-3, "servicer" means the person responsible for *servicing of a loan*. The term "servicing" means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan. 12 U.S.C. § 2605(i)(2)-3.

15

In Plaintiff's Complaint, Plaintiff asserts that she sent two letters, through counsel, to Wells Fargo, on October 8, 2019, and November 14, 2019, which she claims constituted two types of QWRs, RFIs and NOEs, under RESPA. Doc. #: 12 at ¶¶59, 67. However, in Plaintiff's response to Wells Fargo's Motion, as Wells Fargo points out, Plaintiff expressly acknowledges that she has no claim pursuant to 12 U.S.C. § 2605(e) because her inquiries were not related to servicing. *See* Pl.'s Opp. at 13-14, 18-19 ("[] the inquiries Plaintiff sent to Wells Fargo *specifically related to its denial of her Application* [] which was for the express purpose of avoiding foreclosure []…As such, Wells Fargo's failure to respond to Plaintiff's inquiries is enforceable [through] 12 U.S.C. § 2605(k)(1)."). The Court agrees.

A review of Plaintiff's letters reveal that those letters did not relate to servicing of Plaintiff's loan or a payment dispute. Rather, Plaintiff's letters clearly related to a loan modification denial, which is a request to alter the terms of a loan and are not deemed "services" under Ohio law. *See Martini v. JPMorgan Chase Bank, N.A.*, 634 F. App'x 159, 164 (6th Cir. 2015) ("Loan modification requests do not qualify as QWRs ["qualified written requests"] because they do not relate to the loan's servicing"); *see also Smallwood v. Bank of Am., N.A.*, No. 1:15-cv-336, 2015 U.S. Dist. LEXIS 160926, at *23 (S.D. Ohio Dec. 1, 2015) (collecting cases that state: request for a loan modification does not relate to servicing of a loan); *see Kavanagh v. Specialized Loan Servicing, LLC*, No. 3:17CV892, 2020 U.S. Dist. LEXIS 46255, at *30 (N.D. Ohio Mar. 17, 2020) (stating that a loan modification is a request to alter the terms of a loan) (collecting cases).

Applying well established Ohio case law, the Court finds, and Plaintiff seems to concede in her opposition brief, that Plaintiff cannot demonstrate a plausible claim pursuant to 12 U.S.C. § 2605(e).[1]

---

[1] For the same reasons, Plaintiff fails to state a claim pursuant to 12 C.F.R. § 1024.36(d). Under section 1024.36, "[a] qualified written request that requests information *relating to the servicing* of the mortgage loan is a request for

16

B. Section 2605(k)(1)(C) and (E)

In addition to Section 2605(e), Plaintiff asserts RESPA violations pursuant to 12 U.S.C. §§ 2605(k)(1)(C) and (E), which is directed at NOEs. Section 2605(k)(1)(C) provides that:

> A servicer of a federally related mortgage shall not […] fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties. 12 U.S.C. § 2605(k)(1)(C).

With respect to Plaintiff's claim under § 2605(k)(1)(C), while it is not necessarily clear from Plaintiff's Complaint or opposition brief, Plaintiff appears to be arguing that Wells Fargo failed to respond to Plaintiff's inquiries in violation of § 2605(k)(1)(C). *See* Doc. #: 17 at 18-19. Wells Fargo argues that Plaintiff's claim fails because Wells Fargo responded to Plaintiff's inquiries with a decision, which is all that is required under this subsection. At the very least, the Court finds that Plaintiff's RESPA claim pursuant to 2605(k)(1)(C) must be dismissed because Plaintiff fails to plead how Wells Fargo's responses to Plaintiff's inquiries constitute untimely action to respond to Plaintiff under 2605(k)(1)(C). In fact, as Wells Fargo outlines in its reply, the record in this case shows that Wells Fargo responded to Plaintiff's inquiries within 2-3 weeks, and eventually approved Plaintiff for an FHA-HAMP Trial Period Plan. *See* Doc. #: 18 at 14; *see also* Doc. #: 12, Exs. 2, 5, 6, 8, 10, 12, and 13.

Furthermore, Plaintiff does not cite any authority nor has the Court found any authority that demonstrates "[s]ervicers of a federally related mortgage" that responded to inquiries within 2-3 weeks were deemed "untimely." Instead, the Court only found the opposite. *See Christenson v. CitiMortgage, Inc.*, 255 F. Supp. 3d 1099,1106-07 (D. Colo. 2017) (collecting cases) (where

---

information for purposes of this section." Section 1024.36 further requires a servicer to respond within 10 business days to the borrower's request for information where the request pertains to "the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan[,]" and to respond within 30 business days for all other requests for information. 12 C.F.R. § 1024.36(d)(2)(i).

17

defendants took approximately two months to respond to plaintiffs' request, the court found: "because 2605(k)(1)(C) merely requires servicers to either respond or take timely action to respond to borrowers' requests to correct certain [errors] and… defendants actually responded, plaintiffs have no claim under § 2605(k)(1)(C)"); *see also Mader v. Wells Fargo Bank, N.A.,* 2017 U.S. Dist. LEXIS 6109, at *12-14 (D.N.H. Jan. 17, 2017) ("Although the Maders assert that Wells Fargo failed to respond to their request to avoid foreclosure, the Maders acknowledge that Wells Fargo eventually denied their modification application. []. Thus, the Maders' amended complaint establishes that Wells Fargo did in fact respond to the Maders' request to avoid foreclosure and evaluate their modification application."); *see Gasparik v. Fannie Mae*, Gasparik v. Fed. Nat'l Mortg. Ass'n, 2016 U.S. Dist. LEXIS 166778, at *18 (D.N.H. Dec. 1, 2016) (dismissing § 2605(k)(1)(C) claim because though the plaintiff asserts that defendant failed to respond to "numerous requests . . . to avoid foreclosure," the plaintiff's amended complaint was replete with allegations that defendant responded to plaintiff's requests.") Accordingly, the Court finds that Plaintiff has failed to allege an actionable claim under 12 U.S.C. § 2605(k)(1)(C), even assuming Plaintiff's inquiries are covered under this section.[2]

The Court also rejects Plaintiff's argument that she has stated a claim for violation of Section 2605(k)(1)(E). Section 2605(k)(1)(E) prohibits a servicer from failing to "comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." However, Plaintiff failed to clearly identify any such "other obligation found by the Bureau of Consumer Financial

---

[2] 12 C.F.R. § 1024.35 details a servicer's obligations under § 2605(k)(1)(C). *See* 12 C.F.R. § 1024.35. 12 C.F.R. § 1024.35 expands the kinds of "errors" a borrower can send notices regarding and therefore the types of notices a servicer must respond to under § 2605(k)(1)(C). Because the Court finds that Plaintiff actually timely responded to Plaintiff's notices, which category of the enumerated "errors" Plaintiff's notices fall under is not relevant. *See Christenson*, 255 F. Supp. 3d 1099, 1107-08.

Protection." Because the Court finds that Plaintiff fails to state a claim pursuant to Section 2605(k)(1)(E) and (k)(1)(C), the Court need not address the issue of damages under RESPA. Accordingly, Count (5) five of Plaintiff's Complaint is dismissed because Plaintiff fails to point to any applicable provision of RESPA.

### IV. CONCLUSION

In sum, for the reasons detailed above, the Court **GRANTS** Defendant's Motion to Dismiss as to Counts 1, 2, 4, and 5 but **DENIES** Defendant's Motion to Dismiss as to Count 3 (negligent misrepresentation).

**IT IS SO ORDERED.**

*/s/ Dan Aaron Polster December 10, 2020*
**Dan Aaron Polster**
**United States District Judge**